IN THE CIRCUIT COURT
FOR PRINCE GEORGE COUNTY MARYLAND

| | |
|---|---|
| **RONNIE FOOTE**<br>3720 Lumar Drive<br>Fort Washington, MD 20744<br><br>Plaintiff,<br><br>v.<br><br>**CHRIS WRIGHT**<br>**In his official capacity**<br>**SECRETARY OF ENERGY**<br>**US DEPARTMENT OF ENERGY**<br>1000 INDEPENDENCE AVENUE, SW<br>WASHINGTON, DC 20585<br><br><u>**SERVE:**</u><br>**EDWARD ROBERT MARTIN JR.**<br>**US ATTORNEY DISTRICT OF COLUMBIA**<br>601 D STREET, NW<br>WASHINGTON DC 20001<br><br>**KELLY O. HAYES**<br>**US ATTORNEY FOR THE DISTRICT OF**<br>**MARYLAND**<br>**36 S. CHARLES STREET 4TH FL.**<br>BALTIMORE MD 21201<br><br>**PAM BONDI**<br>**ATTORNEY GENERAL**<br>U.S. DEPARTMENT OF JUSTICE<br>950 PENNSYLVANIA AVENUE, NW<br>WASHINGTON DC 20530-0001<br><br>**SAMUEL T. WALSH/**<br>**JONATHAN BRIGHTBILL**<br>**US DEPARTMENT OF ENERGY**<br>1000 INDEPENDENCE AVENUE, SW<br>WASHINGTON, DC 20585<br><br>Defendant. | Civil Action No. C16-CV-25-002242 |

1

## FIRST AMENDED COMPLAINT

Plaintiff Ronnie Foote, by and through counsel, C. Sukari Hardnett, and the Law Office of C. Sukari Hardnett, brings this civil action against Defendant, Chris Wright, SECRETARY OF ENERGY, on the grounds and in the amounts set forth herein:

## PARTIES

Plaintiff Ronnie Foote, a resident of the State of Maryland, who brings this civil action, against Defendant Chris Wright, SECRETARY OF ENERGY, which is located in the District of Columbia on the grounds and in the amounts set forth herein:

## JURISDICTION AND VENUE

This is an action for unlawful employment discrimination in violation of the Maryland Civil Rights Act Article 49B§1 et seq., and, Title VII of the Civil Rights Act, as Md. Code State Gov't §20-1202 -1203, 28 U.S.C. § 2000(e); for Retaliation, Retaliation under Age Discrimination, Continuing Violation and a Hostile Work Environment under Title VII of the Civil Rights Act of 1964 (Title VII); the Prince George's County Local Ordinance (s) on Discrimination PGC Code 2-186(a)(5) also Plaintiff brings this action against the Defendant for unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 (e), *et seq.,* (retaliation, reprisal, hostile work environment), and Section 504 of the Rehabilitation Ace of 1973 (DEA). Plaintiff seeks an award of compensatory and punitive damages and all attorney fees and costs incurred in connection with the filing of this civil action. Plaintiff has exhausted all administrative requirements. ***See Plaintiff Ex. A&B*** attached FAD received by Plaintiff on January 28, 2025 and receipt.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

Plaintiff timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission (EEOC). Plaintiff files this complaint within 90 days after receiving a notice of the right to sue from the EEOC. A copy of the notice of the right to sue is attached as Exhibit A. and B *See* 42 U.S.C. §2000e-5(f)(1).

## PRELIMINARY STATEMENT

Plaintiff, Ronnie Foote is **a decorated** veteran, who joined the military at the age nineteen (19) and honorably discharged as a "Tech Sergeant E-6," after twenty years (20) of service. Upon completing his military service, Plaintiff began working at the Department of Energy (DOE) as an Emergency Management Specialist NQ-0089-02. He assisted (NA-40) management in promoting operational readiness of, and maintain operational awareness for the DOE and the National Nuclear Security Administration (NNSA) emergency management and response activities as a Deputy Watch Officer.

## FACTUAL ALLEGATIONS

Plaintiff Ronnie Foote is an individual with a disability-coronary artery disease.

1. During all times relevant to this action, Plaintiff was employed as an Emergency Operations Specialist and Watch Officer and capable of preforming the essential duties of his job with or without an accommodation. Plaintiff provided adequate documentation from his doctors to support his request for reasonable accommodations.

2. During the time of his employment, Plaintiff was discriminated on the basis of disability. He suffered retaliation, reprisal, harassment, a hostile work environment and denied reasonable accommodations.

3. In October 2022, Plaintiff notified his first line supervisor at DOE, by phone, that he was in the hospital and required surgery.

4. On October 27, 2022, Plaintiff, had open heart surgery at Med Star Washington Hospital Center. On November 14, 2022 Dr. Bafi, heart surgery, submitted a letter to Plaintiff to present to Defendant concern Plaintiff his return to duty on JANUARY 3, 2023 WITH NO RESTRICTIONS.

5. On January 5, 2022, Plaintiff's physician primary care doctor, provided Plaintiff with a letter to Defendant explaining that Plaintiff had heart surgery and would be able to return to work on January 3, 2023. Explaining that "please do not hesitate to call me if you need additional information."

6. In turn, Defendant informed Plaintiff by memorandum dated November 19 and again on November 23, 2022, that he would have to provide additional information " about the issues that would affect his ability to perform his work responsibilities, a prognosis including future treatment, when and if the condition would stabilize, and an explanation of limitations on Plaintiff's ability to perform the essential functions his duties."

7. In the same memo, Defendant advised Plaintiff that if he was seeking accommodations, he would have to submit a four (4) page form from his physician explaining the nature of the disability, the limitations caused by the disability and how the accommodation would assist Plaintiff in performing his duties.

8. The position description was nine (9) pages for Plaintiff's doctor to review and analyze to determine Plaintiff's ability to perform his job responsibilities. Plaintiff was still out on sick leave.

9. On December 19, 2022, Defendant Polk sent Plaintiff another letter informing him that he had not provided the medical information that he requested in the November 23, 2022 letter and Plaintiff had until January 3, 2024 to produce it; if not Failure to provide would result in enforced leave

10. Plaintiff was cleared for duty to returned to work on January 3, 2024.

11. On January 4, 2023, Plaintiff was instructed that he would be placed on night shifts. Plaintiff had just returned from open heart surgery and requested to remain on day shifts until he could consult with his doctors about the safety of working 12-hour night shifts.

12. When Plaintiff returned to work Plaintiff was not on the scheduled to work that entire year for 2023. Although, Defendant Polk told him that he was scheduled to work.

13. On January, 5, 2024, Plaintiff produced a note from his doctor stating that he could return to work with no restrictions but that he (the doctor) did not want Plaintiff to work night shifts and that he would make another determination after Plaintiff's appointment with his primary care doctor on January 25, 2023, about the safety of Plaintiff working night shifts.

14. However, Plaintiff's doctor's appointment was changed and it was rescheduled for February 2023.

15. On January 6. 2023, Plaintiff was placed on Weather and Safety Leave by Defendant without explanation.

16. Defendant Polk granted the WSL for Plaintiff. However, Plaintiff should have been placed on sick or annual leave according to DOE leave policy.

17. Plaintiff believes that Defendant Polk was aware that WSL was not the correct leave placement.

18. When weather and safety related conditions prevent employees from travel to work safely, WSL is customarily granted by supervisors.

19. On February 2, 2023, Plaintiff took a combination of sick and annual leave until April 20, 2023.

20. On April 9 2023, Easter Sunday, Defendant Polk called and emailed Plaintiff to inform him that because he did not submit adequate additional medical documentation, Plaintiff former approved leave request was rescinded and he would be coded AWOL.

21. Plaintiff was coded AWOL for 113 hours from February 1 through February 17, 2023.

22. Previously, on February 15, 2023, before Plaintiff's leave was scheduled to end, Plaintiff called Defendant Polk to request leave, because he had a doctor's appointment scheduled on the day.

23. On April 9. 2023 Defendant requested that Plaintiff go to his doctor to request additional medial documentation.

24. On April, 17, 2023, Plaintiff provided Defendant additional medical documents.

25. Plaintiff was told that if he did not report to work that he would be coded AWOL. Feeling very stressed Plaintiff requested a combination of sick and annual leave until he completed his physical rehabilitation and reported to work on April 20, 2023.

26. On April 9, 2023, Defendant Polk continued to demand additional medical information from Plaintiff.

27. On April 17, 2023, Plaintiff provided additional medical documentation to the Defendant Polk and Defendant Smith, who decided that the medical documentation submitted on February 13,14,15,17 and 21, 2023 was not sufficient.

28. From December 2022 through December 2023, Plaintiff was consistently denied reasonable accommadations and informed that he did not submit sufficient medical documentation that would qualify as him Disabled.

29. Defendant Polk, decided to deny Plaintiff's request for accommodation. This decision was made in contradiction to DOE's disability policy as stated in Policy Memorandum #100 B.:

> 4) a. Before the DMO can officially deny an accommodation request, the LRAC must submit the draft denial to OGC for concurrence. In fact, the OGC office should have been consulted through the entire RA process and in some cases it is mandatory. (See general requirements under section A # 7).

30. On April 25, 2023, Defendant Polk instructed Plaintiff to log onto ATAAPS and check the concur box for a time sheet that he did not concur with.

31. Plaintiff did not concur with the time sheet because the time sheet gave him credit for overtime hours that he did not work because he was on leave.

32. Defendant Polk became very upset with Plaintiff when he would not check the concur box on a time sheet that someone submitted. Plaintiff knew that concurring would have been FRADULENT.

33. Defendant Polk cursed Plaintiff and hung up the phone.

34. On July 28,2023, Plaintiff was placed on a 14-day unpaid suspension.

35. Defendant alleged that Plaintiff did not take an opportunity to rebut or refute the 14 day unpaid suspension implying that Plaintiff agreed with it.

36. Defendants claim that they were not aware of Plaintiff's disability, even after he informed them that he was in the Emergency Room with hypertension and stress from work.

37. Defendants allege that they were not aware of Plaintiff's EEOC activity when Plaintiff filed a charge of retaliation against Defendant Polk. Human Resources and Defendant Polk's supervisors were aware of the complaint because upon information and belief that were interview as a result of the charge of retaliation by an EEO investigator.

38. Plaintiff's job description was altered to add a provision that only applied to Plaintiff and which ultimately persuaded Plaintiff not to formally apply for FMLA.

39. Defendant deducted money from Plaintiff's without notifying him in advance.

40. On April 13, 2022, Defendant Polk placed Plaintiff on leave restriction.

41. Defendant, lied and accused Plaintiff of not coming to work, being unprofessional, and not fulfilling his job responsibilities.

42. However, on January 29, 2023, Plaintiff was offered a temporary promotion to the position of Senior Watch Officer, with an 8% increase in salary.

43. Plaintiff was commended for his willingness to temporary out the additional responsibilities required to fulfill the position.

44. The offer further stated "The dedication and quality of service you continue to provide is a great value added to this organization."

45. In fiscal years 2020, 2021, and 2022, Plaintiff was rated "Fully Meets Expectations."

46. Plaintiff is a qualified individual with a disability, was engaged in prior EEO activity and is over the age of 40.

47. Plaintiff was constructively discharged and forced into retirement in November, 2023.

## COUNT I
## DISABILITY BASED DISCRIMINATION
### Violation of the Rehabilitation Act of 1973

48. Paragraphs one (1) through ten (48) are incorporated by reference as if fully set forth herein.

### The Rehabilitation Act of 1973

The Rehabilitation Act is a law that prohibits the Federal Government as an employer from discriminating against qualified individuals with disabilities. It replaced the vocational rehabilitation act and extended and revised the authorization of grants to states for vocational rehabilitation services, with special emphasis on services to those with the most severe handicaps. There is a reasonable basis for imputing liability upon the Defendant, as Defendant knew and should have known about the Agency's responsibility to provide reasonable accommadations to Plaintiff and failed to take immediate and appropriate corrective action.

49. Plaintiff has high blood pressure, diabetes and heart disease, all of which are disabilities. [1]These conditions are defined as disabilities because they impaired Plaintiffs ability to perform major life activities.

50. Plaintiff met the job-related qualification of his position and was able to perform the essential functions of his job with or without an accommodation.

---

[1] Diabetes is a group of diseases characterized by high blood glucose or sugar levels that result from defects in the body's ability to produce and/or use insulin. It is the most common endocrine in the US. *See Diabetes basics, wwwdiabetes.org*

51. Plaintiff informed Defendant that he needed a modification to not be placed on night shifts and presented documentation from his doctor to support his request. Plaintiff provided medical documentation from his doctors on four separate occasions.

52. Defendant Polk refused to accept Plaintiff's medical documentation on all four separate occasions.

53. Defendant placed Plaintiff on restrictive leave.

54. Defendant denied Plaintiff's leave request from November 2022 through November 2023.

55. Plaintiff acted with reasonable care to take advantage of the employer's policy and procedures to apply for reasonable accommadations and to otherwise prevent the harm that could have been avoided.

56. As a result of the refusal to accommodate, Plaintiff's was subjected to constant harassment that led to a hostile work environment, Plaintiff suffered emotional pain, inconvenience, mental anguish and other damages.

**WHEREFORE**, Plaintiff seeks judgment against the Defendant for compensatory damages in the amount of Three Hundred Thousand Dollars ($300.000), punitive damages in an amount of Three Hundred Thousand Dollars ($300.000), plus interest, costs, attorney's fees and all such just and further relief as the court deems just and proper.

## COUNT II
## RETALIATION/ REPRISAL

Paragraphs one (1) through fifty-seven (57) are incorporated by reference as if fully set forth herein.

**Section 2000e-2 of Title VII of the Civil Rights Act of 1964, as amended, provides in relevant part:**

> **An employer may not fire, demote, harass or otherwise "retaliate" against an individual for filing a charge of discrimination, participating in a discrimination proceeding, or otherwise opposing discrimination. The same laws that prohibit discrimination based on race, color, sex, religion, national origin, age, and disability, as well as wage differences between men and women performing substantially equal work, also prohibit retaliation against individuals who oppose unlawful discrimination or participate in an employment discrimination proceeding.[2]**

57.     Plaintiff filed charge of discrimination against Defendant Polk for Retaliation prior to this complaint.

---

[2] In addition to the protections against retaliation that are included in all of the laws enforced by EEOC, the Americans with Disabilities Act (ADA) also protects individuals from coercion, intimidation, threat, harassment, or interference in their exercise of their own rights or their encouragement of someone else's exercise of rights granted by the ADA. *See EEOC's Compliance Manual Section 8, Chapter II, Part D.*

11

58. Plaintiff was subjected to other negative and unreasonable actions by the Defendant when Plaintiff informed his supervisor that he needed reasonable accommadations and he was charged AWOL. The actions of the Defendant were humiliating, demeaning and unnecessary.

59. Plaintiff was told that if he did not report to work that he would be coded AWOL, even though he was on approved leave.

60. On April 9, 2023, Defendant Polk continued to demand additional medical information from Plaintiff claiming that the medical information was insufficient.

61. On April 17, 2023, Plaintiff provided additional medical documentation to the Defendant Polk and Defendant Polk, alone, decided that the medical documentation submitted February 13,14,15,17 and 21, 2023 was not sufficient.

62. From December 2022 through December 2023, Plaintiff was consistently denied reasonable accommadations and informed that he did not submit sufficient medical documentation that would qualify him as disable.

63. Defendant Polk, alone, decided to deny Plaintiff's request for accommodation. This decision was made in contradiction to DOE's disability policy as stated in Policy Memorandum #100 B.:

> 4) a. Before the DMO can officially deny an accommodation request, the LRAC must submit the draft denial to OGC for concurrence. In fact, the OGC office should have been consulted through the entire RA process and in some cases it is mandatory. (See general requirements under section A #7 of the policy memorandum.

64. On April 25, 2023, Defendant Polk instructed Plaintiff to log onto ATAAPS and check the concur box for a time sheet that he did not concur with.

65. Plaintiff did not concur with the time sheet because the time sheet gave him credit for overtime (premium) hours that he did not work because he was on leave.

66. Defendant Polk became very upset with Plaintiff when he would not check the concur box on a time sheet that someone submitted. Plaintiff knew that concurring would have been FRADULENT.

67. Defendant Polk cursed Plaintiff and hung up the phone and then accused Plaintiff of cursing and hanging up on him which was a lie.

68. Defendant Smith alleged that Plaintiff did not take an opportunity to rebut or refute the 14- day unpaid suspension.

69. Defendants claim that they were not aware of Plaintiff's disability, even after he informed them that he was in the Emergency Room with hypertension and stress from work.

70. Defendants Polk and Smith alleged that they were not aware of Plaintiff's EEOC activity when Plaintiff filed a charge of retaliation against Defendant Polk.

71. Human Resources and Defendant Polk's supervisors were aware of the complaint because upon information and belief that were interview as a result of the charge of retaliation by an EEO investigator.

72. Plaintiff's job description was altered to add a provision that only applied to Plaintiff and which ultimately persuaded Plaintiff not to formally apply for FMLA.

73. Defendant deducted money from Plaintiff's account/pay without notifying him in advance.

74. On April 13, 2022, Defendant Polk placed Plaintiff on leave restriction.

75. Defendant, lied and accused Plaintiff of not coming to work, being unprofessional, and not fulfilling his job responsibilities.

76. Plaintiff was subjected to false statements made about Plaintiff by Defendant to demean and humiliate him. Plaintiff after 20 years of exceptional and faithful service to the Defendant and 20 years of service to The United States Air Force - Plaintiff was constructive discharged.

**WHEREFORE,** Plaintiff seeks judgment against the Defendant for all actual in the amount of Three Hundred Thousand Dollars ($300,000.00) and compensatory damages in the amount of Three Hundred Thousand Dollars ($300,000.00), plus interest, costs, and all such just and further relief as the court deems just and proper.

## COUNT III

### HOSTILE WORK ENVIRONMENT/ HARAASSMENT
**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 (e),** *et seq.*

Paragraphs one (1) through seventy- seven (77) are incorporated by reference as if fully set forth herein.

Section 2000e-2 of Title VII of the Civil Rights Act of 1964, as amended, provides in relevant part:

> **A hostile work environment exists when harassment is so severe or frequent that a reasonable person in the employee's position would find the situation to be abusive. Title VII prohibits harassment based on sex, race, or another protected characteristic, where the harassment culminates in a tangible employment action or is sufficiently severe or pervasive to create a hostile work environment.**

77. Plaintiff has high blood pressure, diabetes and heart disease, all of which are disabilities. These conditions are defined as disabilities because they impaired Plaintiffs ability to perform major life activities.

78. Plaintiff met the job-related qualification of his position and was able to perform the essential functions of his job with or without an accommodation.

79. On October 27, 2022 Plaintiff had open heart surgery.

80. Plaintiff informed Defendant that he needed a modification to the work schedule to not be placed on night shifts and presented documentation from his doctor to support his reasonable request for accommodations.

81. Plaintiff provided medical documentation from his doctors on four separate occasions and the request for reasonable accommodations were denied all four times.

82. Defendant Polk refused to accept Plaintiff's medical documentation on all four separate occasions stating the it was insufficient.

83. On one occasion, Defendant placed Plaintiff on restrictive leave and on another occasion coded him AWOL.

84. Defendant denied Plaintiff's leave request from November 2022 through November 2023.

85. Plaintiff acted with reasonable care to take advantage of the employer's policy and procedures to apply for reasonable accommadations and to otherwise prevent the harm that could have been avoided.

86. As a result of the refusal to accommodate, Plaintiff's was subjected to constant harassment that led to a hostile work environment, Plaintiff suffered emotional pain, inconvenience, mental anguish and other damages and was forced into early retirement.

## COUNT IV

## CONSTRUCTIVE DISCHARGE

Constructive discharge happens when an employee resigns because their work conditions are unbearable due to their employer's actions, instead of being directly fired. This situation is also called constructive dismissal or constructive termination. Despite having voluntarily resigned on paper, the employee had no reasonable alternative to quitting due to their working conditions. The conditions leading to constructive discharge often include harassment, discrimination, bullying, and even forms of workplace violence.

Paragraphs one (1) through eighty-seven (87) are incorporated by reference as if fully set forth herein.

87. Plaintiff acted with reasonable care to take advantage of the employer's policy and procedures to apply for reasonable accommodations and to otherwise prevent the harm that could have been avoided.

88. Plaintiff was bullied each time he requested reasonable accommodations and he was told that it wasn't sufficient and he had to go back to his doctors repeatedly to request medical certificates.

89. It became almost a joke with Defendants when Defendants would give Plaintiff nine pages of documents for him to give to his doctors to sit down and fill-out on accommodations for Plaintiff.

90. Defendants HR and management officials participated in the harassing and demeaning behavior and never seriously took time to follow the law or the agencies policies on Plaintiff's reasonable request for accommodations.

91. On April 9, 2023, Defendant requested that Plaintiff go to his doctor to request additional medial leave.

92. On April17, 2023, Plaintiff provided Defendant with additional medical leave.

93. Plaintiff was told that if he did not report to work that he would be coded AWOL. Feeling very stressed Plaintiff requested a combination of sick and annual leave until he completed his physical rehabilitation and reported to work on April 20, 2023.

94. On April 9, 2023, Defendant Polk continued to demand additional medical information from Plaintiff.

95. On April 17, 2023, Plaintiff provided additional medical documentation to the Defendant Polk and Defendant Smith, decided that the medical documentation submitted on February 13,14,15,17 and 21, 2023  was not sufficient.

96. From December 2022 through December 2023, Plaintiff was consistently denied reasonable accommadations and informed that he did not submit sufficient medical documentation that would qualify him as Disabled.

97. Defendant Polk, alone, decided to deny Plaintiff's request for accommodation. This decision was made in contradiction to DOE's disability policy as stated in Policy Memorandum #100 B.:

4) a. Before the DMO can officially deny an accommodation request, the LRAC must submit the draft denial to OGC for concurrence. In fact, the OGC office should have been

consulted through the entire RA process and in some cases it is mandatory. (See general requirements under section A # 7).

98. On April 25, 2023, Defendant Polk instructed Plaintiff to log onto ATAAPS and check the concur box for a time sheet that he did not concur with.

99. Plaintiff did not concur with the time sheet because the time sheet gave him credit for overtime Premium? hours that he did not work because he was on leave.

100. Defendant Polk became very upset with Plaintiff when he would not check the concur box on a time sheet that someone submitted. Plaintiff knew that concurring would have been FRADULENT.

101. Defendant Polk cursed Plaintiff and hung up the phone and then accused Plaintiff of cursing and hanging up on him which was a lie.

102. On July 28,2023, Plaintiff was placed on a 14-day unpaid suspension.

103. Defendant Smith alleged that Plaintiff did not take an opportunity to rebut or refute the 14-day unpaid suspension.

104. On July 28,2023, Plaintiff was placed on a 14-day unpaid suspension.

105. After returning to work January 3, 2022, after having gone through open heart surgery Plaintiff was never given reasonable accommodations. He was forced to use annual leave and sick leave to provide accommodations for himself and avoid the continued harassment and survive the unbearable working conditions.

106. He was told that he was on the schedule to work twelve (12) hour night time shift when, in fact the was not on the schedule at all.

**WHEREFORE,** Plaintiff seeks judgment against the Defendant for all actual in the amount of Three Hundred Thousand Dollars ($300,000.00) and compensatory damages in the amount of Three Hundred Thousand Dollars ($300,000.00), plus interest, costs, and all such just and further relief as the court deems just and proper.

## DAMAGES

As a direct and proximate result of Defendant's conduct, Plaintiff suffered the following injuries and damages.

a.  Plaintiff has suffered loss of income from being forced to retire four years early.

b.  Plaintiff has suffered loss of pension or retirement benefits.

c.  Plaintiff seeks compensation for all lost wages and benefits, including loss of Social Security benefits. Reinstatement of Plaintiff in his previous position is impractical and unworkable. Therefore, plaintiff seeks an award of future lost wages and benefits to compensate him up to the mandatory retirement age of sixty-five (65).

d.  Plaintiff is entitled to prejudgment interest on lost wages and benefits and post judgment interest on all sums, including attorney fees.

e.   Defendant's conduct was an intentional and willful violation of the Title VII, the ADEA and the ADA. Plaintiff is entitled to an award of liquidated damages within the meaning of the ADEA and Maryland Anti- Discrimination laws.

## ATTORNEY FEES

Plaintiff is entitled to an award of attorney fees and costs under the Title VII, the ADEA and the ADA and Maryland Anti- Discrimination laws.

## PRAYER

For these reasons, Plaintiff asks for judgment against Defendant and for all other relief that the Plaintiff is entitled in addition to all relief the Court deems appropriate, just and fair.

## JURY DEMAND

Plaintiff Requests a Trial by Jury on all Issues.

Respectfully submitted,
Ronnie Foote

_____/S/_____
By Counsel,
C. Sukari Hardnett

C. Sukari Hardnett, Esquire
MD 9909070010
Law Office of C. Sukari Hardnett
P.O. Box 7097
Silver Spring, MD 20910
Tel: (301) 587-7001